SIMON GRATZ, JOSEPH GRATZ and JACOB GRATZ, Administrators of MICHAEL GRATZ, deceased, *against* LEVI PHILIPS, LEAH PHILIPS and BELIAH COHEN.

An agent thus proved his own authority, "I never executed any other deed of defeasance than the one in question. I frequently wrote letters, signed receipts, and other papers of consequence for him, (the principal) by which he at all times considered himself bound. I kept all his books of accounts for upwards of thirty years ; never had a witten power of attorney." *Held :* That a deed of defeasance, executed by such an attorney in the name of his principal, is not evidence to convert an absolute deed to the principal into a mortgage.

A wife executrix, whether so constituted before or after her marriage, may be sued with the other executors; or. if sole executrix, with her husband; and in either case, after judgment against her as executrix, may have a *devastavit* fixed on her and her estate, and her personal or real estate sold for it.

Wherever a husband and wife can sue or be sued by adversary process, an amicable action can be entered, and she and her rights are as much bound as if the proceeding had been adversary.

APPEAL from the Circuit Court of Lancaster county, held by GIBSON, Chief Justice.

The suit was instituted by the following agreement.

*Simon Gratz, Joseph Gratz, and Jacob Gratz,* Administrators of *Michael Gratz,* deceased.
v.
*Levi Philips, Leah Philips* and *Beliah Cohen.*

} Amicable action in the Common Pleas of Lancaster county, of January term, 1822. Case.

We agree that the above action on the case, be entered in the Common Pleas of Lancaster county, of the term of January, 1822 : And we do hereby refer all matters unsettled and in variance be-

(Simon Gratz, Joseph Gratz and Jacob Gratz, administrators of Michael Gratz, deceased, *v.* Levi Philips, Leah Philips and Beliah Cohen.)

tween the parties, to *Casper Shaffner,* Junior, *John Reynolds* and *Joseph Ogleby,* or to a majority of them, to meet at the house of Col. *Jacob Slough,* in the city of Lancaster, at any time the parties shall agree upon, upon thirty days' notice, and to make their award into the Prothonotary's office, with power to adjourn from time to time, until the cause shall be decided; and it is agreed that the arbitrators shall have no power in relation to any lands unsold at the time of instituting this suit, and that no advantage be taken by either party as to the form of suit, or the liability of the parties in it, and that the award and judgment thereon be final. Witness our hands, this 29th January, A. D. 1822.

> Simon Gratz, *one of the Adm'rs of Michael Gratz.*
> Levi Philips, *Executor of Joseph Simon.*
> Molton C. Rogers, *Attorney for Defendants.*
> J. Simon Cohen, *Attorney for Defendants.*
> Wm. Norris, *Attorney for Plaintiffs.*

The award made under the above agreement was set aside. *Narr.* was then filed in *assumpsit* for money had and received by defendants. Defendants plead *non assumpserunt, actio non accrevit infra sex annos,* payment with leave, &c. and set-off; replication, *non solvit,* that the action did accrue within six years, and issues. Replication afterwards added, that moneys were received by defendants, as trustees, to which there was no rejoinder.

The origin of this cause was a partnership in trade entered into in 1760, between *Joseph Simon, William Trent, David Franks,* and *Levy Andrew Levy.* Upon the settlement of their accounts, 28th February, 1769, *Trent* was found indebted to *Simon* and *Franks,* on the general partnership account, four thousand and eighty-two pounds, and to *Simon* on his separate account for which he held his bonds. To secure the payment of the debt to *Simon* and *Franks,* *Trent* then executed a mortgage to them of "seven thousand five hundred acres in Cumberland county," and conveyed other lands to *Simon,* either in satisfaction or as security for his separate debt. On the 18th May, 1790, *Franks* assigned his half of this mortgage to *Bernard* and *Michael Gratz ;* and on the 28th of the same month, ten tracts, supposed to be part of the mortgaged lands, were sold on the mortgage, and bought in by *Simon,* who, on the 2d August following, executed a deed declaring that he held these ten tracts for himself and *Michael Gratz;* "provided, that if hereafter the said assignment, from said *Franks* to said *Gratz* should prove invalid, that then this present acknowledgment shall be null and void." On the 9th and 24th of same August, *Simon* bought in, the two other tracts sold on the mortgage. It appeared that prior to the assignment of the half of the mortgage by *Franks,* to *Bernard* and *Michael Gratz,* *Franks* had by a general assignment of all his property transferred his interest or half of the mortgage to a certain *Tench*

(Simon Gratz, Joseph Gratz' and Jacob Gratz, administrators of Michael Gratz, deceased, *v.* Levi Philips, Leah Philips and Beliah Cohen.)

*Coxe* and *J. Hazelhurst,* in trust to pay a debt to *Amos Hayton ;* and that about the year 1802, *Thomas Billington* set up a claim on this transfer. Mr. *Simon Gratz* then gave satisfactory security to Mr. *Simon,* against *Billington's* claim ; and *Simon* on the 2d July, 1802, executed a new declaration of trust in favour of *Simon Gratz,* for the benefit of *Michael Gratz,* and without any condition whatever. After this a certain *John F. Mifflin* set up a claim under *Trent,* to a number of tracts which he alleged were not included in the mortgage from *Trent* to *Simon* and *Franks :* a compromise was made by which *Simon* held eight of the twelve tracts purchased at sheriff's sale, and *Simon* and *Mifflin* held the remaining four, and seventeen others, as tenants in common. *Simon's* interest in the lands being thus changed, on the 12th January, 1804, he executed another declaration of trust, in favour of *Michael Gratz,* and without any condition annexed, but with a clause contained therein, that *Simon* and his representatives shall conduct the sales. The assignment of *Franks,* under which *Billington* claimed, on the 16th May, 1793, was transferred to *George Davis,* who transferred the same to *Gratz,* for six hundred dollars, after the death of *Simon. Joseph Simon* died 24th January, 1804, having by his last will and testament appointed the defendants his son-in-law *Levi Philips,* and his two daughters *Leah* and *Beliah* to be his executors, and vested in them power to sell his lands : by this authority the lands were sold at different periods from 1804, until 1818, inclusive, and the money received by *Levi Philips.* The plaintiffs claim a moiety of the proceeds of sale of the lands held by deeds to *Simon* alone, and one-fourth of the lands held by *Simon* and *Mifflin.*

The defendants set up various matters of defence. First. That they are not liable to account, because the assignment of the 18th May, 1790, of *Franks* to *Bernard* and *Michael Gratz,* has proved invalid, and that consequently the several declarations of trust under it fail, and are not binding on *Joseph Simon* or his representatives. Second. That they are not jointly liable, there being no evidence of the receipt of any money by any of the defendants, except *Levi Philips.* And, third. That on account of the coverture of *Leah Philips,* this suit cannot be sustained at all. An additional defence as to part of the plaintiffs claim, and the right to a set-off arose from the following circumstances. Two of the tracts of land which had been sold by the defendants, were designated as being in the names of *William Cox,* and *Christian Dunegan,* and which the defendants say were the private property of *Joseph Simon.* Another tract of land in the name of *William Trent,* which had been sold and accounted for by the defendants by mistake, was also the private property of *Joseph Simon,* and that for the amount for which they had accounted, they were entitled to a set-off.

The claim to these lands arose in the following manner : on the

(Simon Gratz, Joseph Gratz and Jacob Gratz, administrators of Michael Gratz, deceased. *v.* Levi Philips, Leah Philips and Beliah Cohen.)

12th January, 1764, *Andrew, William* and *John Foster,* conveyed by three separate deeds, eighteen hundred acres, including the tracts in question, to *John Proctor,* who on the same day conveyed to *William Trent* and *Joseph Spear.* It seemed that *Coxe* and *Peters* were in partnership with *Trent,* as to his part. 22d June, 1764, *Spear* conveyed his half to *Trent,* and on the 28th February, 1769, *Trent* conveyed his interest under *Spear's* deed to *Joseph Simon.* Afterwards on the 8th April, 1769, a partition of these lands was made, when the *William Coxe* and *Christian Dunegan* tracts were allotted to *Trent.* These lands were what are called the "Proctor lands;" and much evidence was given by the defendants to prove that *Simon* during his life, and up to the time of his death, supposed they were his "George's Valley lands," and his own private property; and some evidence that Mr. *Gratz* treated those lands (George's Valley) as the private property of Mr. *Simon,* contrary to his knowledge of the fact.

Defendants offered in evidence the record of an action of account render, *Michael Gratz* v. *The present defendants,* executors of *Joseph Simon,* in Philadelphia, to July term, 1807, to show that if the mistakes about what were the "Proctor lands," and "George's Valley lands," were mutual, the plaintiffs have not abided by it, but have recovered a large portion of the proceeds of the "George's Valley lands," and therefore *Joseph Simon* is not bound by acts done in pursuance of it; this evidence, together with part of the deposition of *Zalegman Philips* to prove the same thing, were objected to by the plaintiffs, and rejected by the court.

The plaintiffs for the purpose of showing that the deed of 28th February, 1769, *Trent* to *Simon,* was not an absolute conveyance, offered a defeasance of the same date, executed by *Levy Andrew Levy,* attorney of *Joseph Simon* to *William Trent,* together with the deposition of *Levy Andrew Levy,* taken on a commission to Baltimore in the action of account render of *Gratz* v. *Simon's* executors, by which some evidence is given of his own authority, to execute the defeasance as the attorney of *Joseph Simon.*

This evidence was all objected to, and the objections overruled by the court.

Much other evidence, having some relation to the different features of the case, was given on one side and the other, but which it is not material to state here.

The counsel for the plaintiffs requested the court to charge the jury upon the following points.

1. That as it is expressly stipulated by the agreement under which this suit was entered in the Common Pleas of Lancaster county, to January term, 1822, No. 162, that "no advantage be taken as to the form of suit, or the liability of parties in it;" it is not competent for the defendants now to resist a recovery on

(Simon Gratz, Joseph Gratz and Jacob Gratz, administrators of Michael Gratz, deceased, *v.* Levi Philips, Leah Philips and Beliah Cohen.)

behalf of the plaintiffs, on the ground that the action is misconceived in point of form, or that the defendants are not jointly liable as trustees of plaintiffs, under the evidence given in the cause.

2. That purchasers for a valuable consideration, *bona fide*, and without notice of any claim upon the estate, are entitled to the peculiar favour and protection of courts of justice; and as *Michael Gratz*, the plaintiffs' intestate, purchased from *Joseph Simon*, for a full and valuable consideration, a moiety of the lands sold to *Joseph Simon*, by the sheriff of Northumberland, without notice at the time of the purchase, of any title or claim to the lands by *Joseph Simon*, or any other person adverse to the title acquired by *Joseph Simon* under the sheriff's sale, and constituted him, *Joseph Simon*, his trustee to sell the lands thus purchased; it is not competent for the representatives of *Joseph Simon*, now to resist the recovery of the plaintiffs for their half part of the proceeds of the lands sold, on the ground of an outstanding title in favour of third persons.

3. That a trustee cannot dispute the title of his *cestue que trust*, and therefore the defendants, the representatives of *Joseph Simon*, cannot resist the title and right of the plaintiffs to recover in this suit. They are estopped by the several deeds given in evidence on part of the plaintiffs, from alleging that no title was acquired under the deeds by *Michael Gratz*, for all the lands mentioned in them.

4. That from the lapse of time, and the non action and acquiescence of the trustees, the jury are bound to presume the trust created by the deed of the 20th March, 1786, from *David Franks* to *Amos Hayton's* assignees, satisfied and extinguished, and that this stale and abandoned claim can form no bar to the plaintiffs' right to recover in this suit.

5. That if the jury believe, that in August 1790, when *Joseph Simon* purchased at the sheriff's sale, and sold a moiety of the lands purchased to *Michael Gratz*, he, *Joseph Simon*, had and possessed the title papers to the tracts of *Robert Sample, Thomas Camelyne, Francis Silver, Joseph Silver* and *Samuel Sample*, called now the George's Valley lands; he did know or was bound to know, that these lands were acquired under the deed of 26th April, 1779, from *William Trent*, in favour of the bond and mortgage given to *Franks* and *Simon*, and were company property, and were not his own private estate; and that the impression of *Joseph Simon*, whensoever derived, that the George's Valley lands were his private estate, cannot affect *Michael Gratz*, who was a *bona fide* purchaser, on the 2d August, 1790, of the tracts of land now claimed by the representatives of *Joseph Simon*.

6. That if the jury believe that *Joseph Simon* made the declarations of trust of 2d August, 1790, of 26th July, 1802, the compro-

(Simon Gratz, Joseph Gratz and Jacob Gratz, administrators of Michael Gratz, deceased, *v.* Levi Philips, Leah Philips and Beliah Cohen.)

mise with *John F. Mifflin*, of 30th December, 1802, and the declarations of trust, of 12th January, 1804, with the circumvention or fraud of *Michael Gratz*, or of any person acting as his agent, practised upon him, in order to procure these papers, then *Joseph Simon* and his representatives are estopped, in conscience, justice, and law, from denying the right of *Michael Gratz* and his representatives, to recover the half of the net proceeds of the sale of the tracts of land, in the name of *Coxe, Dunegan* and *Trent*, even if *Joseph Simon* himself entertained a mistaken impression as to what were his George's Valley lands, from 1790 till his death, in 1804.

The defendants requested the court to charge the jury as follows:

1. That the assignment of *David Franks* to *Bernard* and *Michael Gratz*, and to *Michael Gratz*, of 18th May, 1790, under which plaintiffs' claim, is invalid, the said *David Franks* having by a previous assignment, dated 20th March, 1786, transferred all his property real and personal; and that the acceptance of the order and the several declarations of trust, made upon the faith of the validity of the assignment of 1790, are not binding.

2. If the jury believe that the acceptance of the order, and the declarations of trust were made by *Joseph Simon*, under the belief that the tracts called the George's Valley lands, were his private property, and if it were well known to *Simon Gratz*, the agent of *Michael Gratz*, that such were Mr. *Simon's* impressions, the concealment of the claim upon the part of *Michael Gratz* and his agent, is a fraud which will vitiate the whole transaction.

3. The plaintiffs cannot recover in this action, unless they prove a receipt of money by the defendants jointly; and the coverture of *Leah Philips*, one of the defendants, is a fatal objection to plaintiffs' recovery.

4. This suit should have been instituted against the defendants as executors of *Joseph Simon*, deceased.

5. If the jury believe that the tract in the name of *William Coxe* sold to *John Wicks*, and the one in the name of *Christian Dunegan* sold to *George Knep*, called the Proctor lands, were the private property of *Joseph Simon*, the defendants are not liable to account for them: defendants for the same reason, would be entitled to a credit or set-off for the amount of the tract in the name of *William Trent*, heretofore accounted for by mistake.

A verdict was rendered for the whole amount of the plaintiffs claim, except the allowance of a set-off, that was admitted, and a small deduction for commissions. A motion was made for a new trial for the following reasons.

1. The court erred in not admitting in evidence, the exemplification of the record of the action of account render between the administrators of *Michael Gratz*, and the executors of *Joseph Simon*,

(Simon Gratz, Joseph Gratz and Jacob Gratz, administrators of Michael Gratz, deceased, *v.* Levi Philips, Leah Philips and Beliah Cohen.)

brought in the Supreme Court of the Eastern District of Pennsylvania, to July term, 1807.

2. The court erred in rejecting part of the deposition of *Zalegman Philips,* a witness on behalf of the defendants.

3. The court erred in admitting the deposition of *Levy Andrew Levy,* taken under a commission in the action of account render in the Supreme Court of the eastern district of Pennsylvania, to July term, 1807, No. 6, the record of which suit had been rejected as above stated.

4. The court should have charged the jury that the agreement in relation to the liability of the parties extended only to the award and proceedings of the arbitrators, and that it had no connexion with the agreement to enter the amicable action—the agreement to enter the action and that to refer being entirely distinct.

5. Because the court ought to have charged the jury, that as there was no evidence of the receipt of any money arising from the sales of lands by any of the defendants except *Levi Philips,* or that the others were jointly responsible, the issue was not supported, and the verdict should be for the defendants.

6. Because the court ought to have directed the jury, that as it was in evidence that *Leah Philips* was a *feme covert,* the action against the defendants jointly, for sums received by *Levi Philips,* could not be legally sustained.

7. Because the court should have charged the jury, that the assignment of 18th May, 1790, from *David Franks* to *Bernard* and *Michael Gratz,* and *Michael Gratz* was invalid, and that consequently the declaration of trust of 2d August, 1790, was without consideration and of no validity; and that the declaration of 26th July, 1802, and of 12th January, 1804, though absolute on the face of them, were of no validity, if the assignment of 18th May, 1790, was invalid.

8. Because the court should have charged the jury, that if they believed, that at the time Mr. *Simon* accepted the order on the 22d May, 1790, he was ignorant of the previous assignment of *David Franks* of 20th March, 1786, and that *Michael Gratz,* or those who acted for him, knew it, and concealed the fact from *Joseph Simon,* that then the said acceptance of 22d May, 1790, and the subsequent declarations, were of no validity to entitle the plaintiffs to recover.

9. The court should have instructed the jury, that if they believed from the evidence, that *Joseph Simon* was induced to accept the indemnity, and make his declarations of trust of 26th July, 1802, or of 12th January, 1804, by any representations of *Simon Gratz,* contained in the letter of 23d May, 1802, which said representations have not been proved nor attempted to be proved, then

44

(Simon Gratz, Joseph Gratz and Jacob Gratz, administrators of Michael Gratz, deceased, *v.* Levi Philips, Leah Philips and Beliah Cohen.)

said declarations are to be considered as not binding or affecting the said *Joseph Simon.*

10. That the court ought to have left it to the jury to decide whether the acceptance of 22d May, 1790, or any of the declarations of trust subsequently made by *Joseph Simon*, were, under the circumstances, obtained from him fraudulently or otherwise.

11. The verdict is manifestly wrong, because it is in evidence, that at the time of the execution of the several declarations of trust, Mr. *Simon*, who could neither read nor write, " except his name," was under the mistaken impression that the George's Valley lands were his private property, and was not aware that the Proctor lands were included in the sheriff's sale; that, therefore, the said declarations were void in relation to the Proctor lands, viz : the lands in the name of *Coxe, Dunegan* and *Trent.*

12. Because the verdict is manifestly wrong, as it charges the defendants with the proceeds of the tracts, in the name of *William Coxe*, and *Christian Dunegan*, which tracts were the private property of *Joseph Simon.*

13. The verdict is manifestly wrong, because no credit is given for the proceeds of the tracts in the name of *William Trent*, paid by *Joseph Simon*, in his lifetime, to the plaintiffs' intestate by mistake, and to which the said plaintiffs and their intestate had no claim.

14. Because the court erred in charging the jury, that the deed of 28th February, 1769, from *William Trent* to *Joseph Simon*, for a moiety of the ten tracts derived from *Proctor*, was a mortgage.

15. Because the court erred in charging the jury, that if the said deed was a mortgage, the private debt of *Joseph Simon* was, from the length of time, to be considered as satisfied, and that *Joseph Simon* had no title.

16. Because the court ought to have charged the jury, that if the deed of 28th February, 1769, was originally a mortgage, the possession of the title papers by *Joseph Simon*, the possession and claim of ownership over the George's Valley lands, which he believed to be the Proctor lands, and the lapse of time, were circumstances for their consideration, from which they might infer that the paper called a defeasance, executed by *Levy Andrew Levy*, on the 28th February, 1769, had been surrendered by *William Trent* to *Joseph Simon*, if it ever had been in possession of, or delivered to said *Trent*, of which there was no evidence.

17. The verdict is manifestly wrong, because the jury have found the full amount of interest, from the time of the several receipts of money claimed by plaintiffs, although there was no evidence of any demand for any sums received since 1806.

18. Because the court did not answer the second point of the defendants.

19. The court should have submitted to the jury, as being their

(Simon Gratz, Joseph Gratz and Jacob Gratz, administrators of Michael Gratz, deceased, *v.* Levi Philips, Leah Philips and Beliah Cohen.)

peculiar province, the questions of fraud or mistake, raised in the points submitted to the court by defendants.

The motion being overruled, and judgment entered on the verdict, the defendants appealed to this court.

*Champneys,* for appellants.

By the agreement of the 29th January, 1822, the parties had in view a reference of their matters in variance to an amicable tribunal, and not to a court and jury. It is admitted that neither *Leah Philips* nor *Beliah Cohen,* ever received a dollar of the money claimed to be recovered from them in this suit; and there was no other consideration for their entering into the agreement. When this cause was formerly before this court, a construction was given to this agreement, *Gratz* v. *Philips,* 14 *Serg. & Rawle,* 144, where it is argued by the plaintiff's counsel, that if the case should be remitted to the Common Pleas, the plaintiffs would lose the advantage of one part of the agreement, *the joint liability of the defendants.* As to the construction of the agreement, were cited, *Massey* v. *Thomas,* 6 *Bin.* 333. *Pow. on Con.* 147. *Messina* v. *Hurtzall,* 5 *Bin.* 388. A court should examine with astuteness, an agreement which creates a liability, which equity would not enforce.

*Leah Philips* was a *feme covert* when she signed the agreement, and therefore no judgment against her, predicated upon it, can be sustained. 2 *Saund,* 101, *note a. Sliver* v. *Shelbaugh,* 1 *Dall.* 165. *Brown* v. *Caldwell,* 10 *Serg. & Rawle,* 114. *Stultzfoose* v. *Jenkins,* 8 *Serg. & Rawle,* 177. *Grasser* v. *Eckert,* 1 *Bin.* 586. 2 *Stark. Ev.* 702, *note I.*

If *Joseph Simon* was induced to make the declaration of trust of the 2d August, 1790, by the representations of Mr. *Gratz,* that the assignment to *Coxe* and *Hazelhurst* was invalid; such declaration of trust would not be binding. *Perkins* v. *Gay,* 3 *Serg. & Rawle,* 331. *Levi* v. *The Bank of the U. S.* 1 *Bin.* 27. 1 *Fonb.* 106. 2 *Pow. on Con.* 125. But at all events the court should have submitted it to the jury, as requested. 2 *Stark. Ev* 508. *Dornick* v. *Richenbaugh,* 10 *Serg. & Rawle,* 84. *Work* v. *M'Clay,* 2 *Serg. & Rawle,* 415. *Jones* v. *Wiles,* 8 *Serg. & Rawle,* 150.

The second point the court did not answer, which was error. *Powers* v. *M'Pherrin,* 2 *Serg. & Rawle,* 44. *Belin* v. *Hopkins,* 13 *Serg. & Rawle,* 45.

The deed of 28th February, 1769, of *William Trent* to *Joseph Simon,* for the moiety of ten tracts of land, was absolute upon its face, and the alleged defeasance of *Levy Andrew Levy,* attorney for *Joseph Simon,* should not have been received in evidence, for the attorney had no power to make it; nor did his deposition establish the fact that he had power; and if it had, it should not have been admitted; for an attorney in fact is not competent to establish his

(Simon Gratz, Joseph Gratz and Jacob Gratz, administrators of Michael Gratz, deceased, *v.* Levi Philips, Leah Philips and Beliah Cohen.)

own authority. *Gordon* v. *Bulkley*, 14 *Serg. & Rawle*, 331. *Nicholson* v. *Mifflin*, 2 *Dall.* 246. *James* v. *Gordon*, 1 *Wash.* C. C. 335. *Bellas* v. *Hayes*, 5 *Serg. & Rawle*, 427. *Paley on Agency*, 133. *Wentz* v. *Dehaven*, 1 *Serg. & Rawle*, 312.

*Joseph Simon* always considered the "George's Valley" lands as his private property, until the date of the letter of *Simon Gratz* to *Beliah Cohen*, 6th March, 1804; and the court should have received in evidence the deposition of *Zalegman Philips* to prove this fact; and also the action of account render, to show the time of the discovery of the mistake, and that the plaintiffs received the benefits of it.

The court erred in instructing the jury to allow interest upon the money from the time it was received. A trustee is not chargeable with interest from the receipt of the money, nor until demand made. *Knight* v. *Reese*, 2 *Dall.* 182. *Brown* v. *Campbell*, 1 *Serg. & Rawle*, 176. These moneys were not demanded before suit brought, for the letter of *Simon Gratz*, of 27th October, 1805, demands an account of the "George's Valley" lands only. A demand before the money is received is an illegal demand, and will not alter the rule of law in this particular.

*Montgomery*, for appellees.

When the judge who tries a cause in the Circuit Court is satisfied with the verdict, it must be a strong case of injustice if this court will grant a new trial. *Cain* v. *Henderson*, 2 *Bin.* 108. *Ludlow* v. *The Un. Ins. Co.* 2 *Serg. & Rawle*, 119. *Commonwealth* v. *Eberly*, 2 *Serg. & Rawle*, 9. *Com. of Berks Co.* v. *Ross*, 3 *Bin.* 520. *Smith et al.* v. *Odlin*, 4 *Yeates*, 468. *Jordan et al.* v. *Meredith*, 3 *Yeates*, 318. *Campbell* v. *Sproat et al*, 1 *Yeates*, 327–363.

As to the defence predicated upon the assignment to *Coxe* and *Hazelhurst*, the answers are abundant and easy. There was a resulting trust to *Franks;* and it behooved the defendants to shew that the fund was insufficient without these lands, which they did not do. The lapse of time would preclude any claim upon it. But in 1793, *Coxe, Hazelhurst* and *Franks* assigned to *Davis;* and in 1806, *Davis* assigned to *Gratz*, by which the subject matter of this defence was absolutely vested in the plaintiffs before this suit brought: and for another reason, that after *Simon* knew all about this assignment, he made two other unconditional declarations of trust. As to there being fraud in *Gratz* procuring these declarations, the idea is negatived by the fact, that he afterwards authorizes *Simon* to sell the lands and account to him.

The deed of *Trent* to *Simon* was not an absolute deed, but a mortgage: this is manifest from the consideration being five shillings, and from the defeasance bearing the same date, and which is sufficiently proved by the oath of *Levy Andrew Levy* that he had power to execute it, and that *Simon* declared it was a mortgage:

(Simon Gratz, Joseph Gratz and Jacob Gratz, administrators of Michael Gratz, deceased, *v.* Levi Philips, Leah Philips and Beliah Cohen.)

and by the testimony of *S. Etting,* that *Levy Andrew Levy* was constantly in the habit of writing and executing papers for *Simon,* who could not write himself more than his name : and by a paper in the hand writing of *William Trent,* these lands are enumerated as his *unsold* lands.

But suppose they were his private property, they were certainly sold by the sheriff, and purchased by *Simon* for himself and *Gratz.* Simon is estopped by his declarations of trust, from alleging a defect of title to these lands.

The action of account render, the record of which was offered, was brought for an account of the sale of the five tracts of "George's Valley lands;" it was therefore irrelevant, as was also the parol evidence of the same thing as contained in the deposition of *Zalegman Philips.*

By the declaration of trust, *Simon* reserved to himself the right to sell the lands, and by the same instrument bound himself to account for the proceeds of such sales *when received.* He is therefore, by his contract, bound to pay interest for the money from the time it came to his hands, or those of his personal representatives.

*Leah Philips,* although a *feme covert,* is bound to account. Mr. *Simon* could not, by the appointment of a *feme covert* to execute his will, sell the lands, and receive the money, and thereby defeat the claim of the plaintiffs against his estate, or against his representatives. A *feme covert* may be an executrix with the consent of her husband, *Toll. Law of Ex'rs,* 31–241; and if she takes letters, she is liable to all the incidents of an executor. *Ib.* 357. *Wentworth,* 207. The appointment of husband and wife to execute a will, makes them one executor. All executors must be sued. *Gordon,* 290. *Wentworth,* 95. *Levans,* 201. A married woman cannot administer without the assent of her husband, and the administration then devolves on the husband. *Gordon* 154. *Ld. Raym.* 369. *Com. Dig.* title *Adm'n, letter D.* 1 *Salk.* 306. *Wentworth,* 199. 4 *Term Rep.* 616. *Wm. Black. Rep.* 801, A *devastavit* will bind both husband and wife. 2 *Swinburn,* 750. If the husband submits to award the right of the wife, after his death she is bound. *Kidd on Awards,* 46.

*Norris,* on the same side.

The defendants do not predicate their defence upon merits of their own. They do not contend that they are entitled to the whole proceeds of the sales of the land; but they lay hold of every possible claim, of every one, even remotely connected with the transaction, not to protect themselves, but to injure the plaintiffs.

*Coxe* and *Hazelhurt* have not been heard of since 1793; they cannot defend for them. A trust untouched for twenty-four years, is extinguished in England and every state of this Union. As between

(Simon Gratz, Joseph Gratz and Jacob Gratz, administrators of Michael
Gratz, deceased, *v.* Levi Philips, Leah Philips and Beliah Cohen.)

the trustor and trustee, lapse of time may not operate; but between
the trustee and *cestue que trust*, or the creditors, twenty years is a
flat bar, if nothing is done between that period.   As to the eighteen
hundred pounds, to secure the payment of which the trust was
created, the law presumes it was paid.

Not until the trial of this cause in 1822, before the arbitrators,
did the plaintiffs ever hear of the claim of *Joseph Simon*; nor that the
tracts in the name of *Coxe* and *Dunegan* were his private property.

The antiquity of the transaction, by which *Levy Andrew Levy*,
declared that the deed of the 28th February, 1769, was in the na-
ture of a mortgage, is decisive, when taken in connexion with the
settled law, that a mortgage may be discharged by parol, because
it is a mere security for a debt.   Why take a mortgage of the same
date on the Vandalia estate, to secure the partnership debt, and
take an absolute deed in consideration of five shillings, for a private
debt?

*Michael Gratz* was entitled to the one half of the proceeds of the
sale by the sheriff, which was the consideration for the moiety of
the ten tracts of land.

The claim of *Billington* gave rise to the repeated declaration of
trust of 1802; and that of *Mifflin* to the again repeated declaration
of trust of 1804.

Trustees are liable for interest in some cases without a demand,
and in others not until a demand is made.   Wherever the contract
does not upon the face of it require a demand, interest will run
from the receipt of the money.   We are entitled to recover it in
this case, because, First.   The contract demands it.   Second.   All
our letters and correspondence in 1805, contain a demand of it.
Third.   The conduct of the trustees has been vexatious.

Can this suit be supported?   *Joseph Simon* by his will in 1799,
appoints the defendants to be his executors, and vests in them pow-
er to dispose of his real estate; they thereby become, *nolens volens*,
as to *Michael Gratz*, his trustees.   We having had the right and
remedy against *Joseph Simon* in his lifetime, must therefore after
his death, have the same right and remedy against his executors,
who voluntarily take upon themselves the trust.

A *feme covert* may take an estate and hold it even in trust, when
her husband does not dissent.   *Com. Dig.* 98--110, title, *Baron
and Feme.   Coke Lit.* 3 *a.* and 356, *b.   Doug.* 452.   1 *Roll. Ab.* 660.
Upon a lease to husband and wife, debt for rent may be maintained
against both.   1 *Roll. Ab.* 110.   2 *Levins,* 63.   The wife cannot be
called on to give bail.   She cannot plead separately.   The bail of the
husband is the bail of his wife; so of his plea.   Although a wife
cannot contract for herself, yet she may contract in trust for another,
*with the consent of her husband.*   In *Wilt* v. *Franklin,* 1 *Bin.* 502, the
assent of trustees is presumed.   Mrs. *Philips* could not in the execu-

(Simon Gratz, Joseph Gratz and Jacob Gratz, administrators of Michael Gratz, deceased, *v.* Levi Philips, Leah Philips and Beliah Cohen.)

tion of this trust, make a contract, by which her husband's rights could be affected; if she did her duty, he could not be affected in any way. She is not here sued for a violation of a contract made by her; but for a violation of her duty under a trust, accepted by the consent of her husband.

*Cohen* in reply.

It is one of the first principles of the law on this subject, that a contract entered into by a *feme covert* during coverture is void; as to the *feme* she is under the influence of her husband, and, in the language of the Chief Justice, in *Lancaster* v. *Doland*, 1 *Rawle*, 231, " the law will not permit her to be coaxed or bullied out of her rights." If the will of the husband can make his wife a party defendant to an action, or if the wife can *agree* to become a party thereto, and be bound by its consequences, every protection which the principles of the law throw around a *feme covert* are swept away; for she can in every case do indirectly, what it is admitted she cannot do directly. Cited, *Gross* v. *Eckert*, 1 *Bin.* 575.

It is said that this court in the exercise of its equitable powers, may grant relief. But what grounds are there for equitable relief here against Mrs. *Philips*, who it is not pretended ever received one dollar of the money for which this suit is brought? In the case of *Lang* v. *Keppele*, 1 *Bin.* 123, referred to by the appellees, there was a distinct ground of relief, which does not exist here. It would be monstrous to charge the separate estate of Mrs. *Philips*, for no other reason, than that she, while a *feme covert*, entered into an agreement, which if she had been a *feme sole*, would have bound her. It is always for the protection of the wife, that the law permits her to be joined with her husband as a defendant, and then only when in a fiduciary character. It is said her separate estate is liable for a *devastavit* committed by her. This is only true in the case where she was executrix or administratrix before marriage. *Gord. Law of Dec.* 266. 2 *Brown Chan.* 323. *Toll. Law of Ex.* 358–9, 430. 1 *Salk.* 306. This distinction is reasonable: for a *feme sole* executrix accepts the trust voluntarily, and receives the advantages of her *devastavit*. But when the trust is cast upon her during coverture, she can only accept with, and cannot refuse to accept without the consent of her husband; and whether she accepts or refuses the trust it is for his benefit or advantage, and his estate alone should be liable for a *devastavit*.

But it is said it is no protection to one *sui juris*, that he is joined with one incompetent to contract. This is true as regards contracts, but not true as to proceedings at law.

The tracts of land in the name of *Coxe* and *Dunegan*, were derived from *Proctor*, and *Simon* always claimed them as his own private property, supposing however that they were the "George's Valley lands;" this mistake he might readily have made, for he

(Simon Gratz, Joseph Gratz and Jacob Gratz, administrators of Michael
Gratz, deceased, v. Levi Philips, Leah Philips and Beliah Cohen.)

could neither read nor write.  That he did thus mistake, is fully
established by the facts, that he exercised acts of ownership as to
them; he leased them; he mortgaged them; and, in 1802, sold
them to *Potter, Morris* and *Craig.*  In his books, the expenses of
the "George's Valley lands" are charged to his private account.

*Gratz* knew he was under this mistake; for in a letter of 27th
October, 1805, to *Levi Philips,* he says, "I always did consider the
'George's Valley lands' as belonging to the holders of *Trent's* bond
and mortgage."  He always had access to *Simon's* papers, and
had the deed for these lands in his possession.   It is not until after
the death of *Simon* that he claimed an account of the "George's
Valley lands," which he knew *Simon* had always claimed as his
own property.   On this part of the case, the court took the facts
from the jury, by saying "that as to the three tracts, the defence
failed."

If the deed of *Trent* to *Simon* of the 28th February, 1769, was
originally intended as a mortgage, it subsequently became an abso-
lute deed by the acts and consent of the parties.  This is infer-
able from the fact, that it was not proceeded upon to judg-
ment; that it was not put upon record until 1789; and the defea-
sance never was recorded, which is inconsistent with the character
of *Simon,* as an honest man, unless the parties had previously
agreed to consider it an absolute deed.   *Simon* took possession
of the "George's Valley lands," supposing he was taking the "Proc-
ter lands," under this deed to *Trent:* the mortgage was therefore
accompanied by possession for more than twenty years, which of
itself makes the deed absolute.   The other points in the case are
fully stated in the opening.

The opinion of the court was delivered by

HUSTON, J.—I shall attempt to give a statement of this case; the
facts of which, in the order in which they were submitted in the
Circuit Court, and here, it was not easy to comprehend at first
view.

, On 16th May, 1760, a partnership as merchants, or Indian
traders, was entered into by *Joseph Simon, Levy Andrew Levy,
David Franks* and *William Trent.*

About 1762–3, the Indians plundered their storehouses, and
they became involved in debts and difficulties; and then, or soon
after, the partners ceased to do business as a firm.

On the 4th January, 1769, *William Trent* gave a bond to *David
Franks* and *Joseph Simon,* for eight thousand one hundred and
sixty-four pounds, conditioned to pay four thousand and eighty-two
pounds, the sum due them on settling the accounts. . How *Levy
Andrew Levy* got out of the firm, or settled, does not appear.

On the 28th February, 1769, *William Trent* gave to *Franks* and

(Simon Gratz, Joseph Gratz and Jacob Gratz, administrators of Michael Gratz, deceased, *v.* Levi Philips, Leah Philips and Beliah Cohen.)

*Simon,* a mortgage on seven thousand five hundred acres of land in Cumberland county, (this is the only description,) and some other imaginary property, to secure the above bonds, and the debt due on them.

*William Trent,* besides the above debt to the creditor partners of the company, owed a private account to *Joseph Simon,* to secure which, he, on the same 4th January, 1769, gave to *Simon* his bond for eight hundred and eighty-five pounds fourteen shillings, conditioned to pay four hundred and forty-two pounds seventeen shillings, on 4th January, 1770.

Before the date of this bond, viz: 12th January, 1764, *Andrew Foster* had conveyed to Captain *John Proctor,* five hundred acres of land on Mahony creek, *John Foster* had conveyed to the same, three hundred acres, and *William Foster,* one thousand acres.

On the same day, *Proctor* conveyed to *Trent* and *Joseph Spear,* the same lands. On the 22d June, 1764, *Spear* conveyed his moiety to *Trent.* On the same day on which *Trent* gave the above mentioned mortgage to *Franks* and *Simon,* viz, 28th February, 1769, they conveyed their moiety of these lands got from *Spear,* to *Joseph Simon.* The conveyance is endorsed on the back of *Spear's* deed. The lands are here called ten tracts, said to contain three thousand eight hundred and fifty acres; the consideration in the deed, five shillings. The other moiety belonged to *Coxe* and *Peters.* But another paper was given in evidence, dated 4th January, 1769, and signed by *Joseph Simon,* in which he recites a debt of eight hundred and eighty-five pounds fourteen shillings, conditioned to pay four hundred and forty-two pounds and seventeen shillings, which would be due in two weeks. That indenture witnessed, that on the said *William Trent* or *George Croghan,* for him, making over to said *Joseph Simon,* as *security for his debt,* the full quantity of five thousand acres of land, out of a tract of land which said *Trent* holds in company with *George Croghan,* on the head of the river Delaware, in the county Albany, and province of New York, and the said *Croghan* engaging to have it effectually transferred to said *Simon,* as security for the debt aforesaid, and the said *William Trent,* making over likewise, a quantity of land purchased of *John Proctor,* (the half of which belonged to *William Coxe* and *Richard Peters,*) then the said *Joseph Simon* doth agree, that the payment of the said debt be deferred for one year, and a new bond taken for the same, payable in one year from that date. And further, there was offered and received in evidence, a defeasance to the deed of 28th February, 1769, dated the same day, and signed *Levy Andrew Levy* for *Joseph Simon;* this made the deed of the same date a mortgage to secure the debt of four hundred forty-two pounds seventeen shillings.

45

(Simon Gratz, Joseph Gratz' and Jacob Gratz, administrators of Michael Gratz, deceased, *v.* Levi Philips, Leah Philips and Beliah Cohen.)

This made it proper to introduce evidence as to payment of the bond, and that was as follows: On the back of the bond was endorsed a receipt, dated 28th December, 1781, for a bond for three hundred forty-five pounds nine shillings and six pence, on account of interest.

A bond, dated 28th December, 1782, from *Trent* to *Simon*, for seven hundred ninety pounds and seventeen shillings, conditioned for the payment of three hundred forty-five pounds nine shillings and six pence; and another bond dated 20th March, 1784, same to same, for one hundred ninety pounds fifteen shillings and eleven pence, conditioned for the payment of ninety-five pounds seven shillings and eleven pence, in one year.

Among the lands which came through *Proctor*, were three tracts on Middle creek, in the names of *William Coxe*, *William Trent* and *Christian Dunegan*.

This part of the case must be kept in mind; for the greatest part of the difficulty and dispute in this cause, arose from a real or supposed confusion of the tracts conveyed to *Simon* alone for his own debt, with other lands hereafter to be mentioned, which were conveyed to him by *Trent*, in payment of the debt to him and *Franks.* The validity of the defeasance, and the authority of *Levy Andrew Levy*, to sign it for *Joseph Simon*, was also contested.

The next fact, in order of time was, that on the 4th of January, 1779, *William Trent*, for the purpose of discharging the mortgage to *Franks* and *Simon*, conveyed to *Simon* one thousand nine hundred and twelve acres of land, at twenty shillings per acre, and a receipt for one thousand nine hundred and twelve pounds, was that day endorsed on the bond.

And on the 26th April, 1779, he also conveyed three thousand five[hundred and sixteen acres, at the same price of twenty shillings per acre, to *Joseph Simon*, for the same purpose. Among the tracts, (and the respective quantity of each was specified,) were five tracts in George's Valley. It may be noted here, that on the face of the deed, these whole three thousand five hundred and sixteen acres were conveyed expressly on account of the partnership debt; and these payments deducted from the principal and interest of the bond, would leave about three thousand dollars still due.

In 1786, *David Franks* being in London, and indebted to one *Amos Hayton*, executed a deed of trust to *Tench Coxe* and *Isaac Hazelhurst*, of certain specified lands, (none of those herein before mentioned,) and all the personal estate and effects of said *David Franks*, in North America, and also, all debts and sums of money due and owing to said *Franks*, from any persons in America, in trust, to pay the debt to *Amos Hayton*, and the residue to *Franks*.

On the 18th May, 1790, *David Franks*, recites the bond and mortgage from *Trent*, to himself and *Simon*, and in consideration

(Simon Gratz, Joseph Gratz and Jacob Gratz, administrators of Michael
  Gratz, deceased, *v.* Levi Philips, Leah Philips and Beliah Cohen.)

of a debt due to *Bernard* and *Michael Gratz*, of one thousand nine
hundred sixty-eight pounds two shillings and two pence, and a debt
to *Michael Gratz* of six hundred and twenty-four pounds, he assigns
to them all his interest in said bond and mortgage, reserving to
*Joseph Simon* his expenses respecting the premises, *over and above
his (Simon's,) one half of said bond and mortgage.* And in case the
proceeds of the said mortgage should exceed his debt to *Gratz*, the
overplus for *David Franks.*

Along with this assignment and of the same date, *Franks* drew
an order on *Joseph Simon*, to pay to *Bernard* and *Michael Gratz*, one
half part of what should be received on the bond and mortgage.
This was presented to *Joseph Simon*, and by him accepted on 22d
May, 1790. *Joseph Simon* had at this time sued out a *levari facias*
on the mortgage, and levied it on fifteen tracts of land in Nor-
thumberland county; of which three were purchased by strangers,
ten by *Joseph Simon*, and two in the name of *Levi Philips*, but
treated by *Simon* as his own ever after.

On 2d August, 1790, there is a declaration of trust by *Joseph
Simon*, in favour of *Bernard* and *Michael Gratz*, which recites the
assignment of *Franks* to *Gratz*, and adds, " provided nevertheless,
that if hereafter the said assignment should prove invalid, then
this present acknowledgment shall be null and void." This de-
clares *Michael Gratz* joint owner with *Simon* in the lands purchased,
and in the money received from those who had purchased the three
tracts: and promised, as the lands should be sold, to pay to *Mi-
chael Gratz* one half of the proceeds. It mentions ten tracts.

20th May, 1802, *Levi Philips*, who was the son-in-law and clerk
of *Simon*, informs *Simon Gratz*, then acting for his father *Michael
Gratz*, that *Thomas Billington* was claiming under the assignment
to *Hayton.*

23d May, *Simon Gratz* replies, he had long known of that claim,
and that the assignment was not available, &c. On the 26th July,
1802, *Simon Gratz*, as attorney for *Michael Gratz*, gives to *Joseph
Simon* a bond of indemnity against the pretended assignment of
*David Franks*, so far as it may be used to affect the rights of *Simon*
to the mortgaged lands. Same day *Levi Philips*, for *Joseph Simon*,
and in his presence, gives a new declaration of trust to *Michael
Gratz*, for the lands purchased; and promises to pay over half of
the money, as soon as it is received from the sale of the lands.

On the 12th January, 1804, another deed of trust was executed
by *Joseph Simon*, like the last.

*John F. Mifflin*, claimed the lands bought in under the mortgage
and brought an ejectment for them; and on 30th December, 1802,
*Mifflin, Simon* and *Gratz* made an agreement, by which *Mifflin* got
three of the tracts bought by *Simon*, and one bought by *Philips*.
*Simon* and *Gratz* got the remaining eight tracts, and one half of

(Simon Gratz, Joseph Gratz and Jacob Gratz, administrators of Michael Gratz, deceased, *v*. Levi Philips, Leah Philips and Beliah Cohen.)

seventeen tracts, which *Mifflin* claimed, and which they claimed under the mortgage for seven thousand five hundred acres.

24th January, 1804, *Joseph Simon* died, having first made his last will and testament, by which he appointed the defendants to be his executors.

I now go back to *Franks'* assignment to *Hayton*. On the 16th May, 1793, *Tench Coxe* and *Isaac Hazelhurst* and *David Franks* made an assignment to *George Davis*.

On the 24th July, 1806, *George Davis*, assigned to *Simon Gratz*. This suit was brought to recover one half of the money actually received since the death of *Joseph Simon*, from the sales of the eight tracts contained in the sheriff's deed to *Simon*, and the declarations of trust, and not ceded to *Mifflin*, and one-fourth of the purchase money received by defendants from the sale of the seventeen tracts, of which *Mifflin* was half owner, and *Simon* and *Gratz*, were joint owners of the other half.

Of the preceding, the defendants gave in evidence all that related to the private debt from *Trent* to *Franks*. All the deeds from the *Fosters* to *Proctor*, from *Proctor* to *Spear* and *Trent*, and *Trent* to *Simon*.

A partition was made between *Trent*, *Coxe* and *Peters*, on the 8th of April, 1769, by which the tracts in the names of *William Trent*, *William Coxe*, and *Christian Dunegan*, fell to *Trent*; and as defendants alleged, thus became the exclusive property of *Joseph Simon*. They showed, that in the adjustment with *Mifflin*, the tract in the name of *William Trent*, was allotted to *Mifflin*, and the other two, *Coxe's* and *Dunegan's*, had been sold by defendants; and although these three tracts had been levied on as *Trent's* by the sheriff of Northumberland, and sold as forming part of the seven thousand five hundred acres, and bought by *Simon*, and a trust as to half of them declared for *Gratz*, yet they alleged all this was mistake. They proved that *Joseph Simon* could not read or write, except his name. They also gave evidence to show that *Joseph Simon*, through his whole life, (under a mistake to be sure,) considered the George's Valley lands, as those called the Proctor lands. That the expenses, taxes, &c. of the other lands were charged in his books, one half to *David Franks*, while he was owner, and after the assignment by *Franks* to *Gratz*, were charged to *Gratz*; while in his books, all charges arising on the George's Valley lands, were made as arising from *his own* land, and that many of these entries were made by *Simon Gratz*, who lived with *Joseph Simon*, his grand father. They showed that he leased them, mortgaged them as his own on the 28th June, 1790, and afterwards discharged the mortgage; that *Simon Gratz*, witnessed an agreement, for the sale of one of them, and knew the whole transaction, and the mistake, as appeared by his letter to one of the defendants, soon after the death of *Joseph Simon*.

(Simon Gratz, Joseph Gratz and Jacob Gratz, administrators of Michael Gratz, deceased. *v.* Levi Philips, Leah Philips and Beliah Cohen.)

The defendants also gave in evidence the assignment of *Franks* to *Coxe* and *Hazelhurst*, in 1786; the subsequent assignment of *Franks*, *Coxe* and *Hazelhurst* to *Davis* in 1793, and that of *Davis* to *Simon Gratz* in 1806.

The defendants then offered in evidence an action of account render, No. 6, of July term, 1807, *Michael Gratz* against the present defendants, as executors of *Joseph Simon*, deceased, which as amended stands,—*Michael Gratz*, surviving partner, and who had been jointly interested with *Bernard Gratz*, deceased, to show that if the mistakes were mutual, and both parties acted on the supposition, that the "George's Valley lands" were the "Proctor lands," that the plaintiffs have not acted as partners under the deeds of trust of 1790–1802 and 1804, by *Simon* to *Michael Gratz*, but had recovered the eleven-twelfths of the price for which *Simon* sold them; and, that so far, he had rendered *Franks'* assignment to *Gratz* invalid, and therefore the deed of trust became null and void. And they further offered the deposition of *Zalegman Philips*, counsel in that cause, to prove what was then claimed by the plaintiffs, and other matters. The court rejected the record, and that part of the deposition which related to what was claimed and proved in that cause.

To understand this, it is necessary to examine, for what the former suit was brought, and by whom, and against whom. When *Joseph Simon*, in January, 1779, took nineteen hundred and twelve acres of land, for nineteen hundred and twelve pounds; and in April, three thousand five hundred and sixteen acres, for three thousand five hundred and sixteen pounds, in payment of the mortgage, he held those lands by previous or subsequent agreement, in trust for himself and *David Franks*, and after the assignment by *Franks* to *Bernard* and *Michael Gratz*, in trust for himself and the Messrs. *Gratz's*, as is alleged, and shown by both parties. He sold certain of those lands, particularly the five tracts in George's Valley and two others, in his lifetime, and received the purchase money.

In the account render suit offered in evidence, *Michael Gratz*, in his own right, (for he had a separate bond of his own secured by the assignment,) and as surviving partner of *Bernard Gratz*, sued for an account of those specified lands, stating and describing them; and that they were held in partnership by *Joseph Simon*, and *Bernard* and *Michael Gratz*. The account made out by the auditors, states each tract, and the price at which it sold ; but strange as it may seem, they give to *Joseph Simon* one-twelfth part only, and the other eleven parts to the plaintiff. The exceptions to the report not being filed in time, it was confirmed. 3 *Bin.* 474. It appears by the admissions and proof in this cause, that there the plaintiffs declared on one contract and recovered on a different, and even an inconsistent one. *Bernard Gratz* never had any interest in the *Hayton*

(Simon Gratz, Joseph Gratz and Jacob Gratz, administrators of Michael Gratz, deceased, *v.* Levi Philips, Leah Philips and Beliah Cohen.)

deed: it was purchased by *Michael Gratz,* after *Bernard's* death, which appears in that record to have been in 1804. Besides, under the evidence given in this cause, that *Joseph Simon* applied to *Gratz* respecting this claim, and was told it was worthless, it could not be that the partner who thus informed him, should afterwards purchase it for a mere trifle, and use it to its full amount against his partner, at least not as to partnership property. *5 Johns. Chan.* 407. Add to this the bond of indemnity given by *Gratz* to *Simon,* that it should not affect the partnership claim under the mortgage; which I would consider a covenant that it should not. It presents a case to my mind, without the least shadow of doubt, but we cannot reverse or affect that judgment; nor can we, as is asked, give credit in this suit, although it is an equitable action, for what *Michael Gratz* recovered, there beyond his share; because that would in effect be reversing that judgment; and because this suit is between different parties, and to settle the accounts of a different partnership. When in 1790, *Joseph Simon* and *Michael Gratz* purchased the lands at sheriff's sale, the purchase money belonged to *Joseph Simon, Bernard* and *Michael Gratz.* The lands purchased belonging to *Joseph Simon* and *Michael Gratz,* and they held them, not under the mortgage, and old partnership, which were ended by the sale, but under the sheriff's deed and the contract, of which the several deeds of trust of 1790, 1802 and 1804, are the evidence. This suit is not against the estate of *Joseph Simon,* but against the defendants as trustees of moneys received by them in that capacity; and not for any thing received by *Joseph Simon,* in his lifetime. Whatever remedy then (if there is any) the estate of *Joseph Simon* may have against the plaintiffs, on account of the former agreements and proceedings on them, it must be in some other action; for this purpose, that record, was not evidence in this case. But it was offered in another view, to show that there was a former suit, and that in that suit, the plaintiffs in this cause alleged and showed, that *Joseph Simon,* during all the latter part of his life, was impressed with the belief, that the " George's Valley lands," were the "Proctor lands," and his individual property; that the plaintiff then proved this to be a mistake, and that the tracts in the names of *William Coxe, William Trent,* and *Christian Dunegan,* were really the " Proctor lands," and that the plaintiff then recovered on this proof. And they contended that if the plaintiffs then recovered the price of the " George's Valley lands," on proving the mistake, defendants here ought to be discharged from accounting for the price of the *William Coxe* and *Christian Dunegan* tracts. The plaintiffs reply, that by levying on, and selling those tracts, as included in the mortgage, and executing the several deeds of trust, the defendants are estopped from setting up any other title. I do not think the last deeds of trust make the matter any stronger than if it had been

(Simon Gratz, Joseph Gratz and Jacob Gratz, administrators of Michael Gratz, deceased, *v.* Levi Philips, Leah Philips and Beliah Cohen.)

left on the first, *under the circumstances of this case.* And as the plaintiffs themselves proved the mistake, and recovered, I think the defendants ought to be permitted to show this, and to show also, the real state of facts : and unless some cause is shown why it should be so, I do not see why the same party shall correct the mistake when he gains by it, and hold the other party to it, when he would gain by holding him to it. I am not to be understood as giving an opinion of what ought to be the final decision on this point; that must depend on all the evidence : I only say the evidence ought to be admitted, as important in the decision.

But it is said next, that the deed from *Trent* to *Simon* for the "Proctor lands" was only a mortgage, and that the mortgage is to be presumed paid from lapse of time. Of this last I doubt, under the circumstances of the poverty of *Trent*, till his death, and other matters in this cause. Presumption met by presumption is for the jury. In deciding whether this was a mortgage, the deed or writing of defeasance, signed *Levy Andrew Levy* for *Joseph Simon*, is of primary importance: although not under seal, yet it operates to destroy a deed under seal, and to take away the title to lands. It affects not the property of the firm of which *Levy Andrew Levy* was a partner, but the private estate of *Joseph Simon.* I think it much stronger than the case of *Shaub* and *Withers,* decided this term. I did not agree to that case, but am bound by it. But by the evidence he had no authority: he says, "I never executed any other deed of defeasance than the one in question. I frequently wrote letters, signed receipts, and other papers of consequence for him, by which he at all times considered himself bound. I kept all his books of accounts, for upwards of thirty years; never had a written power of attorney." Now to me this presents the idea of a clerk in a store, or acting partner, and not an attorney in law or fact as to lands. He does not say any of those important papers related to lands, or that he had authority to execute this, or that *Joseph Simon* knew of it. And the testimony of *S. Etting* goes no farther. We think this paper ought not to have been received. But what difference can it make in this cause, *if it is once found by a jury, that the whole proceeding as to the tracts Coxe and Dunegan, is a mistake and error,* whether they belonged to *Joseph Simon,* exclusively, or to *William Trent's* heirs, and *Simon* was only mortgagee? In either case the plaintiffs have no claim to them. And if the plaintiffs' right to them fails, it would be improper in us to decide between *Simon's* heirs and *Trent's* heirs; the latter are not before us.

I am of opinion then, that the record of the action of account render was admissable, not for the purpose of revising, correcting, or in any way affecting that judgment, but to show there was a former suit, and to let in proof, if such there be, that in that cause

(Simon Gratz, Joseph Gratz and Jacob Gratz, administrators of Michael Gratz, deceased, *v.* Levi Philips, Leah Philips and Beliah Cohen.)

the plaintiffs proved the *Coxe* and *Dunegan* tracts to be the "Procter lands," and that *Joseph Simon* was mistaken as to these and "George's Valley lands," as being material evidence in deciding whether the plaintiffs are entitled to the proceeds of those two tracts. By the bye, it seems as if this record was never presented to the chief justice who tried the cause, in that point of view.

And, I am also of opinion, that the defeasance signed by *Levy Andrew Levy,* for *Joseph Simon,* was not evidence.

Mr. *Gratz* has been called an innocent purchaser, and this insisted on; it is true he was a joint purchaser of lands sold by the sheriff on a mortgage, the joint property of *Simon* and *Gratz,* though the name of *Gratz* was not in the mortgage. Who directed the levy does not appear; each had an equal right to do it. The purchase was a mere arrangement; being owners of the mortgage, neither paid any thing; it extinguished so much of a joint debt. Neither of them purchased from the other, or paid any thing to the other. There is nothing in the case to show that *Gratz* would have agreed to receive half the price at which the lands sold, and let *Simon* keep the lands. The price bid for the whole ten tracts, was only one thousand and thirty-two pounds eight shillings. At all events, the mortgage, (though I by no means say it was not an absolute deed,) was not extinguished by lapse of time, in 1790. *Trent* had been paying or renewing the securities in 1785; and *Simon* having purchased and *taken possession of these Coxe and Dunegan tracts*, and no claim by *Trent* or his heirs, it will be for the court and jury to say, whether his claims can now be opposed to that of *Joseph Simon;* and if not, the right to the price of these two tracts, must depend on the fact of complete mistake in *Joseph Simon,* or not.

I now come to the objections to the action.

There had been a prior suit between the parties, but in which the defendants were sued as executors of *Joseph Simon.* Wearied with the contest, they agreed to discontinue that suit, and entered the present amicable suit. It contains the following clause, " it is agreed that the arbitrators shall have no power in relation to any lands, unsold at the time of instituting this suit ; and that no advantage be taken by either party as to the form of the suit, or the liability of the parties in it." It is now contended, that the parties defendants, being trustees, each was alone liable for what each received; and that *Leah Philips,* being the wife of *Levi Philips,* could not be sued, nor could any judgment be rendered against her. These objections, or at least one of them, was before the court, and decided. 14 *Serg. & Rawle,* 144. There never could be any doubt about it. There are often difficulties in proving which of two trustees actually receives the money; and the circumstances which will excuse or make liable all of them. They may waive all testimony

(Simon Gratz, Joseph Gratz and Jacob Gratz; administrators of Michael Gratz, deceased, *v.* Levi Philips, Leah Philips and Beliah Cohen.)

on this point, and agree to be liable: and it is greatly unreasonable, after thus putting the plaintiffs at ease on this point, to move for a new trial, because they did not prove what was expressly admitted. Defendants were all executors of *Joseph Simon,* and trustees of these lands; they knew their own situation, and how the money received, had been divided among them; they have put it out of their power to object on this account, in this suit.

But another objection is made, that *Leah Philips* is the wife of *Levi Philips,* and a married woman, and cannot be sued, or cannot enter into an amicable action. A number of cases on this point were cited, and positions laid down, which were contrary to common impressions and constant practice.

A wife may be sued together with a husband, for a debt of the wife before marriage, and judgment rendered against both. A wife executrix, whether so constituted before or after her marriage, may be sued with the other executors, nay must be; or if sole executrix, sued with her husband: and in either case, after judgment against her as executrix, may have a *devastavit* fixed on her and her estate, and her personal or real estate sold on it.

Her husband and she may bring an ejectment for her lands, and two verdicts and judgments will bind and bar her right forever—so if she is defendant. Her husband and she may, nay her husband alone, may have partition or valuation, under our intestate acts; and her husband and she may be plaintiffs or defendants, in a writ of partition at common law, which under our acts of assembly may eventuate in a sale of the lands, and division of the money. In all these cases the husband can appoint an attorney at law for himself and wife, and she is bound, both during his life, and after; except perhaps, on proving actual fraud. A husband may submit to arbitration out of court, the rights of his wife, either as an individual, or as executrix or administratrix, and she is bound.

And I take it now, in this State, wherever a husband and wife can sue or be sued, by adversary process, an amicable action can be entered, and she and her rights are as much bound as if the proceeding had been adversary. It is only *in pais* that her rights to land are not affected, except by a separate examination. In court no such thing is required. The affairs of this world require that disputes should be ended. The married women are interested. It is not true in fact that husbands wish to destroy the property or rights of their wives; and we cannot act on that principle.

In chancery, if a married woman is a trustee alone, or jointly with her husband, or with others, she must be brought in; and as the chancellor decrees against each, according to their several faults, the decree effects her and her estate, or not, according as the justice of the case requires.

46

(Simon Gratz, Joseph Gratz and Jacob Gratz, administrators of Michael
    Gratz, deceased, *v.* Levi Philips, Leah Philips and Beliah Cohen.)

Cases have been cited making a difference between the decisions
at law and in chancery, as to a husband's liability; and between his
liability where he marries an executrix, and where she becomes
so after marriage.

A husband who marries a woman, is liable in all actions, and to
all demands during coverture, which could have been brought
against her if sole; whether they are against her as an *individual*,
or executrix, or trustee. If she was executrix before marriage, and
she is not sued in his life time, the common law gave no remedy
against his representatives; for there must be first a suit against the
executrix and judgment *de bonis testatoris,* before she would
be fixed for a *devastavit,* and his representatives could not be
sued as representatives of the testator. In such case, on a bill
in equity, they did not hold his representatives liable in every case.
If the goods were wasted before he married the executrix, his
estate was not liable. If the *devastavit* was after marriage, (as it
must be if she was made executrix after, or might be if she had the
goods when he married her,) his estate was liable. For the law
in such case gave him the control and management of them. And
this is the real and substantial distinction, and the *dicta* in 3 *Brown's
Chan.* 323, are mistakes of the reporter.

The law was thus-perfectly settled before 1776, and so settled
since the case in 3d *Brown,* and as *Brown* is cited by every modern
writer who turns compiler, and so is read; I refer to 1 *Shoals* and
*Le Froy.* 248, *Adair* v. *Shaw,* where all the old cases are collect-
ed, and the above conclusion drawn.

If the goods were left in specie at the death of the husband,
his representatives were not liable; if laid out in lands or goods and
left to the wife, she must answer for them, and if she was executrix,
and the goods were given away, or released, and no benefit to him
or her, his estate was liable in the first instance, and then hers, if
she had any.

The fiction of law that a wife has no understanding, and can do
no wrong, has but a limited existence in chancery, where the mat-
ter is considered, more according to the fact and the reality of the
case. In this country a married woman cannot be imprisoned:
If she has no estate of her own, a judgment against her and her hus-
band cannot affect her more than a judgment against him. If she
has an estate, and has acted in such a way as to make that estate
liable by adversary suit, in which her husband must and could em-
ploy counsel for her, the same result may be produced by an amica-
ble suit. This is not an application by her, to be relieved from a
suit fraudulently entered by her husband in her name: The same
counsel who signed the agreement for an amicable suit, make the
motion.

Where one objection has been made as to form of action, it must

(Simon Gratz, Joseph Gratz and Jacob Gratz, administrators of Michael Gratz, deceased, *v.* Levi Philips, Leah Philips and Beliah Cohen.)

be a very uncommon case, in which I would listen to another, on a ground which existed before the time of the former.

Gibson, C. J.—I join in granting a new trial, but for a reason common only to my brother Smith and myself; so that the judgment on this point, although conclusive between the parties, will not be a precedent for future cases. The action is against the defendents in their own right; and being for what was not a debt of the decedent, it could be brought against them in no other way. But a *feme covert* who, as such, can do no act nor incur any responsibility, can make no contract whatever. In actions to which she was liable at her marriage, and for torts and tresspasses during the coverture, she must be impleaded jointly with her husband, but that she cannot be impleaded on a contract made during the coverture, is as well established as any other fundamental principle of the common law. *Palm.* 313. 16 *Johns.* 281, *Edwards* v. *Davis.* Mr. *Philips* would be exclusively chargeable for the receipts of his wife, which are in point of law *his* receipts, even though the money were paid into her hands as a trustee. It is on this principle alone, that a husband is chargeable for goods which have been received through the hands of his wife to his use. But the very case occurred in *Grasser* v. *Eckert,* 1 *Bin,* 575, where the wife was not allowed to be charged with her husband for money jointly had and received. If that case is to go for any thing, it negatives the notion of a special usage in analogy to the practice of courts of chancery, and asserts the broad principle of the common law. What is there, then, to distinguish it from the case at bar? Without her assent, neither her husband nor her attorney could subject Mrs. *Philips* to an action for what is not her proper debt. But what capacity had she to assent, or to become a willing party to the action, if she had no capacity to assent and become a party to the cause of action? A joint promissory note would not have bound her. But if she may become a party to the action, she may doubtless still set up her original irresponsibility. By no means. She is again to be met by her agreement to waive objections on that and every other ground. The matter then comes to this, that although she is disabled by the common law from binding herself by contract, she is nevertheless able to subject herself to all the consequences of a contract, by volunteering as a defendant, and estopping herself by an agreement from asserting the original disabilty which the law interposed for her protection; and this, notwithstanding that such an agreement whether made by herself or some one on her behalf, is as much a contract as any which constitutes an original cause of action.

As regards other important parts of the case, I have the misfortune to stand alone. Our difference of opinion in respect to these,

is attributable, it seems to me, to that comparative disadvantage in obtaining a precise knowledge of the circumstances, which is always felt in a greater or less degree by the judges who have not tried the cause, and particularly a cause like the present, the transactors of which are spread over a period of more than half a century. The paper book is made up of condensed memoranda of the evidence, and without a laborious investigation of a mass of documents which have not been furnished, it is unintelligible. It will therefore be necessary for me to develope the particular points, by separating and putting aside the facts and circumstances that do not immediately belong to them.

It seems to be agreed that the record of the action of account render, was incompetent evidence, in the aspect in which it was presented. But as it is intimated that it may be competent in some other aspect, it is necessary to consider the recovery in that action in all its bearings. It is conceded that it cannot be unravelled here; but an intimation is given that it may have been a breach of the covenant of indemnity, the fallacy of which is made apparent, simply by an exposition of the facts.

Before his assignment to the Messrs. *Gratzes, Franks* had assigned his whole estate to trustees for payment of a particular debt; and when Mr. *Simon* executed the first declaration of trust in favor of *Michael Gratz,* it was on condition that the assignment under which the latter claimed, should not prove invalid. Most clearly the purpose of this condition was to secure Mr. *Simon* from being compelled to pay the proceeds of the lands twice—to *Gratz* after having paid them to the trustees. The aim of Mr. *Simon,* who was a stakeholder, was to be secure in paying to the person entitled, all the monies in his hands as the estate of *Franks*—not protection from payment of a farthing which was not his own. Such was the nature of this condition, which however, is no further important than as it serves to explain the covenant of indemnity which supercedes it. After a recital of the premises of that covenant, that *Gratz* is entitled to the effects in the hands of Mr. *Simon,* but that these were claimed under the previous assignment to the trustees, and that Mr. *Simon* was unwilling to decide, follows a declaration that Mr. *Simon* "is willing to pay ALL the monies and to assign and set over ALL the effects which are, or were in the hands of the said *David Franks,* in his lifetime, or at the present time, to the said *Simon Gratz* on being indemnified or kept harmless by reason thereof." Accordingly *Gratz* covenants to indemnify him against the demand of the trustees " for any part of any money or effects, or other property belonging to the estate of *David Franks* in his (*Simon's*) hands, WHICH SHALL BE PAID, SECURED TO BE PAID, ASSIGNED OR SET OVER TO THE SAID *Simon Gratz,*" "so that the said *Joseph Simon* shall not now, nor at any time hereafter, come

to, or suffer any loss, damage, expense, or trouble, in, or by reason of the premises, or touching the monies, effects, or property *so* paid, assigned, or set over, *to the said Simon Gratz.*" Thus the covenant is not that the trustees, or any one in their stead, may not recover any part of the estate of *Franks,* but only such part as shall have been paid, or secured to be paid to *Simon Gratz* as the agent of his father under the subsequent assignment. If then *Simon Gratz* has not recovered on the title of the trustees, any thing which had been previously paid, or secured to be paid to himself or his father as the representative of *Bernard* and *Michael Gratz,* he has broken neither the letter nor the covenant, which forbids no assertion of the right of the trustees that might not involve Mr. *Simon* in the consequences of a mispayment, Now the proceeds of the George's Valley lands, which had not been included in any of the deeds of trust, had neither been paid, nor secured to be paid, to *Michael* or *Simon Gratz;* and if Mr. *Simon's* estate has been compelled to pay no where, any thing that was not due somewhere, (and we are to suppose the recovery on account render to have been just,) what is the difference whether the recovery was under the one assignment or the other? Or how can it be said that the recovery was not, in fact, on the assignment to *Bernard* and *Michael Gratz?* Either assignment would pass the whole interest of *Franks;* and though in the order which accompanied the assignment to the Messrs. *Gratzes,* (which by the bye, is not necessarily a part of the title,) his interest in the mortgage is estimated at a moiety, yet if the estimate were erroneous, it would not restrain the operation of the assignment, or bind the rights of the parties under it. The same estimate is in Mr. *Simon's* declaration of trust of the ten tracts, and the same remark is applicable to it, that it was no part of the title in the action of account render, which was brought for the proceeds, not of those ten tracts, but of the George's Valley lands, which had been conveyed in part payment of the mortgage long previously. There is nothing, then, in the way of an intendment that the recovery was under the assignment to *Bernard* and *Michael Gratz;* and it is certainly no breach of the covenant that they have recovered, on that or any other title, if such be the fact, more than the sum to which they were in justice entitled; especially as the excess is chargeable to the supineness of Mr. *Simon's* executors in omitting to file exceptions to the report of the auditors in due season. Indeed, if we take for granted what is assumed in the opinion of the court, that the recovery was actually as surviving partner of *Michael Gratz,* it would follow demonstrably, that it must have been on the assignment to the Messrs. *Gratzes;* for the title of the trustees never vested in *Bernard,* who was dead when it was got in by *Simon Gratz.* But the fact is, that *Michael* brought the action in his own name, and counted

simply in his own right. .But whether the recovery were on the
one title or the other, it is sufficient that nothing is to be paid
*twice* by the estate of Mr. *Simon* in consequence of it; the contin-
gency, against which the covenant was intended to guard, not hav-
ing happened nor being about to happen.

On what ground, then, can the record possibly be evidence?
It is said to be admissible to shew that there was a former suit;
that the plaintiff in that cause proved the tracts in the names of
*Coxe* and *Dunegan* to be part of the Proctor lands; and that Mr.
*Simon* was mistaken as to these and the George's Valley lands. I
believe these are nearly the words. It is admitted, then, that the
record is not evidence as any independent fact; but as inducement,
and to what? To the fact that the plaintiff proved on the trial of
the action of account render, what no one has disputed here.
That these two tracts are part of the Proctor lands, was taken for
granted by all parties throughout the course of the trial, the only
question having been, whether they had passed to Mr. *Simon* by
the transfer of *Spear's* deed. The question. of their identity with
the Proctor lands, was altogether foreign to the action of account
render, which had for its object the proceeds of the George's Valley
lands, which had, at a different time, been conveyed to Mr. *Simon*
in part satisfaction of the partnership debt; and whether these
two tracts were part of any body of lands owned by Mr. *Simon* on
his separate account, was no part of the inquiry. It was sufficient
for Mr. *Gratz* not to claim the price of them, that they were not sold.
Neither do I perceive how the record tended, either directly or as
an inducement, to show that Mr. *Simon* had confounded the Proc-
tor and the George's Valley lands. The action was brought after
his death, and neither depended on, nor contributed to illustrate
the state of his belief; and as inducement to evidence of mis-
take, it was superfluous, the defendants having been let into all
their proofs of the fact without it. But the truth is, their aim was
an indirect one—not to make way for evidence of mistake, but to
make the alleged mistake *tell* if proved, by evidence, *aliunde.* It
was to persuade the jury that *Simon Gratz* had suffered his grand-
father to die in ignorance of a fact material to his interest, and
taken advantage of his own superior knowledge the moment he
was gone. But the record was not offered in the aspect in which
it is declared to have been competent; and, I therefore presume the
new trial is granted exclusively for the admission of the de-
feasance executed by Mr. *Levy.*

I must here take occasion to repeat what I said more than once
at the argument, that this paper was admitted on other grounds
than a supposed valid execution of it under a parol authority. It
bears even date with the conveyance to Mr. *Simon*, to which it has
reference, and was probably executed at the same time and place.

(Simon Gratz, Joseph Gratz and Jacob Gratz, administrators of Michael Gratz, deceased, *v.* Levi Philips, Leah Philips and Beliah Cohen.)

Add to this, that Mr. *Simon* was not only unlettered and dependent in these matters on the services of his friends, but it had appeared in the evidence, that this form of execution, had been used by him in another instance, in which Mr. *Philips*, one of the defendants, executed a deed for him, *in his presence*, and as his attorney.   On these proofs, I thought the instrument might go to the jury, leaving them to judge, from the circumstances, whether it had been executed in Mr. *Simon's* presence and with his assent; and if so found, it would according to *Shaub* v. *Withers*, *(ante,)* 285, be his immediate deed. But not to insist upon this, there is another, and it seems to me an impregnable ground of competency, which I suggested on the trial and at the argument, without having since heard it contested. It is this.   In addition to the circumstances just noted, the conveyance to Mr. *Simon*, was for the nominal consideration of five shillings, *being accompanied with the grantors bond for the payment of a debt;* and this bond and conveyance had been preceded by another deed, in which an acknowledgment of the debt is coupled with a declaration that these very lands among others were to be conveyed to Mr. *Simon* to secure it.   Mr. *Levy* who executed the defeasance as Mr. *Simon's* attorney, was his confidential agent in transacting his current business, signing in that capacity receipts and other important papers in Mr. *Simon's* name, who never testified dissatisfaction at any of his acts, but always on the contrary ratified them. Mr. *Levy*, had however, executed no other deed than the one in question.   All this was proved by the testimony of Mr. *Etting* and Mr. *Levy*, in a way to ensure belief.   Now then, if a mortgage was INTENDED, of which there cannot be a rational doubt ; and if a valid execution of the instrument was prevented by ignorance or mistake, WHAT WOULD A CHANCELLOR DO ?   Where an agreement for a mortgage was drawn by the mortgagee, who omitted to insert a covenant for redemption, the mortgagor who was only a markman, was permitted to give evidence of the mistake, *Joynes* v. *Slatham*, 3 *Atk.* 389.   Is not that the case at bar ?   So where the mortgage was in two deeds, and the mortgagee omitted to execute the defeasance, *Maxwell* v. *Montacute, Prec. Chan.* 526, *S. C.* 1 *Eq. ca. Abr.* 19, *pl.* 4. 5.   The very case again.   So also where an absolute deed was made, and the grantee, instead of taking the profits, took the interest of his money, this was given in evidence as explicative of the transaction, *(id.)*   If then a chancellor would not shut his eyes on any of the attendant circumstances, he most surely would not shut them on the defectively executed defeasance, of all others the most powerful to show not only ignorance and mistake, but the precise nature of the meditated TERMS of the forbearance.   What has our own court done ?   In *Wharf* v. *Howel*, 5 *Bin.* 499, where the question of mortgage or not, depended partly on parol evidence, the whole was left to the jury as matter of fact, particularly the

(Simon Gratz, Joseph Gratz and Jacob Gratz, administrators of Michael
    Gratz, deceased, *v.* Levi Philips, Leah Philips and Beliah Cohen.)

testimony of the scriviner who had told the parties that the defeas-
ance in connexion with the absolute deed constituted a mortgage.
If then the jury should be of opinion that the parties proceeded on
an impression that the defeasance executed by Mr. *Levy,* constitu-
ted a mortgage at law, it shall be taken for such in equity.    But
how shall the jury judge of their impression, or the terms they had
in view, without seeing the paper which contains those terms.    Of
their actual intent as deducible from the contemplated defeasance
in connexion with the other circumstances, it is impossible to doubt.
At a time when there was, as I have been told by the late Mr.
Justice *Yeates,* who came to the bar in 1766, but seven country
lawyers in the Province, and consequently when every man was
his own lawyer, it is by no means strange that these parties should
have thought that a deed might be executed under a parol authori-
ty.    My brother HUSTON himself, has just said, he would even now
have thought so too, had it not been for our recent decision in *Shaub*
v. *Withers.*

From another position in the opinion of the court, I am constrain-
ed to dissent in explicit terms.    Among the lands supposed to be
bound by the mortgage, and by consequence actually bought in by
Mr. *Simon,* are the two tracts in the names of *Coxe* and *Dunegan.*
To rebut the claim of the plaintiffs to the price of these, the defen-
dants attempted to show that they were bought in and included in
the deed of trust by mistake, being in fact Mr. *Simon's* own proper-
ty under *Trent's* conveyance for Mr. *Simon's* separate debt.    In re-
ference to this, it is said in the opinion of the court, *that if it be once
proved to a jury that the whole proceeding as to these tracts was by mis-
take, then whether they belonged to Simon exclusively, or to Trent's
heirs, Simon* BEING BUT A MORTGAGEE,—*in* EITHER *case the plaintiffs
have no claim to them.*    I admit here, and I so directed the jury at
the trial, that if Mr. *Simon* ignorantly declared a trust of his own
land, it would not bind him, and this whether the *cestui que trust* had
shown the truth of the case on another occasion or not.    And by
the bye, nothing of the kind is pretended to have been shown in
the action of account render.    Take it, however, according to the
other alternative, that Mr. *Simon* was but a mortgagee; and the
facts connected with the presumption of payment from lapse of time,
will stand thus.    On the bond which accompanied the conveyance
in 1769, there is endorsed a receipt for interest paid by a fresh
bond in 1781.    Again, in 1784, (not 1785, as assumed in the opinion
of the court,) *Trent* gave Mr. *Simon* another bond, but whether for
principal, or for interest due on the preceding, or for any other
consideration, as there is no other receipt endorsed on either of
them, cannot be conjectured.    Then from 1781 to the inception of
this suit in 1822, is a period of forty-one years; or even from 1784
to 1822, is a period of thirty-eight years, during which no act was

(Simon Gratz, Joseph Gratz and Jacob Gratz, administrators of Michael Gratz, deceased, *v.* Levi Philips, Leah Philips and Beliah Cohen.)

done or step taken by Mr. *Simon,* to obtain satisfaction of this debt. It is said he took possession of these lands, and treated them as his own. It must be within the recollection of every one who heard the trial, that not a spark of evidence was given to that effect, and that nothing of the sort was pretended. He, nor any of his representatives, has ever to this day, asserted a claim to these lands under the deed for his separate debt, either as a mortgage or as an unconditional conveyance. On the contrary, the purchase of them under the partnership mortgage, was in direct disaffirmance of his supposed title to them on his separate account. What act has he done, then, in assertion of this particular claim, or what is there to account for his having done nothing ? It is idle to assign *Trent's* poverty as a reason for the delay, when these very lands might have been got if the debt had not been paid. If, then, this conveyance was originally a mortgage, of which there is no room to doubt, the presumption of payment from lapse of time is overwhelming; and if, as is neither impossible nor improbable, these tracts were included in the partnership mortgage also, then there is nothing in the case to distinguish them from the others. Take, it however, that they were not so included, and we have the case of lands purchased on joint account, by one of two joint mortgagees, and sold by him, after having executed a deed of trust to his companion, from whom he detains his share of the price on the pretext that as the land was, in fact, not included in the mortgage, neither has a title. This would be a strange defence. Having purchased at their joint risk, they are jointly entitled to the profit, and that too, independently of any declaration of trust. What if the sheriff had sold to a stranger? He could not have set up want of consideration as a defence; and either mortgagee could have ruled the money into court, and taken his share of it. But the land itself, being taken in lieu of the price of it, is to be treated as money and subjected to the same rights. Had the defendants sold with general warranty, they would have been entitled to retain till they should be secured to the amount of their share of the risk from eviction, but no warranty is pretended: moreover, the title of *Trent's* heirs is barred by the statute of limitations.

There are, beside these, some other shades of difference between my view of the cause and that taken by the court; but what I have said, sufficiently indicates my reasons for thinking the verdict right on the merits.

Smith, J. concurred with the chief justice in regard to the liability of Mrs. *Philips;* and with Huston J. as to the merits.

Ross, J. concurred with Huston, J.

Rogers, J. did not sit in the cause, having been of counsel with the defendants.     Judgment set aside and a new trial ordered.